Filed 8/4/26  San Benito High School Dist. v. San Benito County Bd. of Ed. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SAN BENITO HIGH SCHOOL DISTRICT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN BENITO COUNTY BOARD OF EDUCATION,<br><br>    Defendant and Respondent,<br><br>POLYTECHNIC ACADEMY,<br><br>    Real Party in Interest and Respondent. | H053061<br>(San Benito County<br> Super. Ct. No. CU-24-00026) |

A county board of education may approve a petition for a countywide charter school that operates at one or more sites within a county and provides instructional services not generally provided by a county office of education.  (Ed. Code, § 47605.6, subd. (a)(1); undesignated statutory references are to this Code.)  The county board must find the countywide charter's educational services will be offered to a pupil population that cannot be as well served by a charter school operating in only one school district in the county (§ 47605.6, subd. (a)(1)).  The county board must be satisfied that the charter school has reasonable justification for why it could not be established by petition to a school district (§ 47605.6, subd. (b)).

San Benito High School District petitioned for a peremptory writ of mandate to set aside a decision by the San Benito County Board of Education approving the countywide charter petition of Polytechnic Academy. The trial court found the Board appropriately determined Polytechnic's charter program would provide different services than those already provided by the county to a student population that could not be as well served by a charter school operating in one school district. The District on appeal reiterates that Polytechnic's single-site charter provides the same services already provided by the county and could operate as effectively as a charter school operating in one school district. As we will explain, the Board's findings were rational and in accordance with section 47605.6. We will therefore affirm the judgment denying the District's mandate petition.

## I. BACKGROUND

### A. PROCEEDINGS BEFORE THE COUNTY BOARD OF EDUCATION

Polytechnic petitioned to establish a countywide high school charter program in Hollister that would serve approximately 500 at-risk high school students between the ages of 13 and 22. The proposal presented an individualized program featuring dual enrollment opportunities, career technical education pathways with a college preparatory program, long-term early college and career support, and a five-part educational experience aiming to bring students who had fallen behind up to grade-level standards. Polytechnic hoped to close the achievement gap for the county's lowest performing student groups, including Hispanic students, English learners, socioeconomically disadvantaged students, students with disabilities, students at risk of leaving school before graduating, and students who had left school but wished to return. It focused on at-risk students attending the existing three school districts serving the county (the District, Aromas-San Juan Unified School District, and San Benito County Office of Education) and planned to work with local middle schools to identify struggling eighth grade students who were more likely to drop out and could benefit from its program.

Polytechnic estimated 500 to 800 students countywide would qualify for its services based on test scores and high school completion rates.

Polytechnic stated that its charter program would be structured as a countywide charter to ensure at-risk students throughout the county would have equal access to its highly personalized educational program regardless of residential district. Polytechnic asserted its program could not be offered within a single school district without increasing educational inequity because a district charter is required to give enrollment preference to students residing within the district, while enrollment in a countywide charter is equally available to all students residing within a county. Polytechnic urged that a countywide charter would ensure consistent oversight and greater accountability, promote collaboration, and enhance its ability to acquire and finance facilities in any location in the county.

Around the same time Polytechnic submitted its petition, the District had requested funding from the Board for the development of a new high school in response to projected enrollment increases. The District objected to Polytechnic's petition on the basis that it did not meet the statutory requirements to establish a countywide charter program. (Aromas-San Juan Unified School District also objected to the petition.) According to the District, countywide charter schools are a unique form of charter that bypass district charters only under limited circumstances. Polytechnic did not demonstrate that it would offer services to students who could not be served as well if the charter school were to operate within the District, nor did it show it would provide a unique program that did not already exist at schools within the District or the county. The District also argued Polytechnic had altered the petition after it was submitted. It pointed to procedural and ethical rules, noting that it was not allocated time to separately object to the petition at an upcoming hearing and that a proposed Polytechnic board member was related to a County Office of Education employee who participated in the petition review process.

At a public hearing to determine the level of community support for Polytechnic's petition, Polytechnic presented in favor of its petition and the District spoke in opposition to the petition alongside local community members. The District stressed that Polytechnic would duplicate the model it had at its own high school and planned to create at its proposed new high school.

The San Benito County Office of Education reviewed Polytechnic's petition and published a staff analysis recommending approval of the countywide charter petition with certain conditions. The Office of Education determined that a countywide charter was justified because "students from throughout San Benito County will all receive equal preference in admission to [Polytechnic's program], whereas a charter submitted to a single school district must give preference to students who reside in that district, rather than the county as a whole." Allowing all county students to have equal access to enrollment was particularly important because 93 percent of high school students in the county resided within the District's boundaries, while 7 percent resided within the boundaries of Aromas-San Juan Unified School District. According to the Office of Education, a district charter would disadvantage students residing within Aromas-San Juan Unified School District.

The District objected to Polytechnic's petition on the same grounds twice more, once joined with Aromas-San Juan Unified School District and its board of trustees, Hollister Elementary School District and its board of trustees, San Benito High School Teachers Association, Hollister Elementary School Teachers Association, and California School Employees Association. (Aromas-San Juan Unified School District and the high school in Aromas-San Juan Unified School District objected separately as well.) The joint letter highlighted that Polytechnic's charter would divert revenue from the District and Aromas-San Juan Unified School District, putting programs at risk. The District emphasized that a district charter would not disadvantage out-of-district students because charter schools must admit all students who wish to attend, and a residence-based

4

preferential lottery system is implemented only if the number of students who wish to attend exceeds the charter school's capacity. The District also stated that its high school provided the same educational services proposed by Polytechnic and that the District and Office of Education already served a similar at-risk student population with similar educational programs via San Andreas Continuation High School. The District reiterated conflict of interest allegations and argued Polytechnic's petition usurped the educational programs the District had been working on for months.

At the hearing before the County Board of Education, the Board heard presentations from the Office of Education and Polytechnic in support of the petition. The District provided public comment in opposition, emphasizing the similar programs provided at the District's high school. The Board adopted the recommendations and findings by the Office of Education and voted to approve Polytechnic's countywide charter petition.

## B. TRIAL COURT PROCEEDINGS

The District petitioned for a writ of mandate, seeking to set aside the Board's decision granting Polytechnic's charter petition and declaratory and injunctive relief to prohibit Polytechnic from continuing to operate. (Code Civ. Proc., § 1085.) The District argued the Board did not adhere to its ministerial duty to strictly comply with the statutory requirements under section 47605.6 for establishment of a countywide charter school, emphasizing that the Education Code prefers district charters and mandates denial of a countywide charter petition unless specific findings are made. The District alternatively argued that the Board abused its discretion in determining the statutory requirements were satisfied.

According to the District, Polytechnic could operate as effectively as a district charter school given its single location within the District and the similar educational program already available to the same student population at San Andreas Continuation High School. The District argued Polytechnic's goal of serving at-risk students was not

5

logically related to its alleged need to operate throughout the county and that the asserted lottery enrollment disadvantage was illusory because it was unlikely the small number of at-risk students at Aromas-San Juan Unified School District would be subjected to the lottery. The District also argued the Board could approve lottery preferences to address Polytechnic's concerns regarding exclusion of Aromas-San Juan Unified School District students. The District contended the Board's lottery preference justification would render the statutory district charter preference superfluous because all district charter schools are required to enroll out-of-district students who wish to attend and would therefore qualify as countywide charters. The District also argued the Board's approval process lacked transparency and invoked conflicts of interest.

The Board and Polytechnic opposed the mandate petition, arguing the Board did not abuse the broad discretion afforded to it by granting the petition. Both the Board and Polytechnic argued that operation at a single site is consistent with countywide charter authorization, that San Andreas Continuation High School was a District-run school that did not provide all the services Polytechnic aimed to provide to more expansive student population, and that a countywide charter would ensure the disadvantaged students at Aromas-San Juan Unified School District would have equal access to the charter school. According to the District and Office of Education, the demographic data illustrated the enrollment disadvantage: The high school located within the District enrolled over 3000 students and would quickly fill Polytechnic's 500-student enrollment capacity, while the high school located within Aromas-San Juan Unified School District enrolled over 200 students with a greater proportion of English learners and homeless students. Polytechnic also argued it was not allowed to add residency preference to the lottery system nor required to add other preferences to ensure students throughout the county would have an equal chance to attend Polytechnic. Polytechnic asked the court to consider the equitable nature of granting the writ of mandate, stating hundreds of students had already elected to attend Polytechnic and teachers and administrators had already been hired.

6

Noting the substantial discretion afforded to county boards of education to approve countywide charter schools and the associated judicial deference, the trial court denied the District's petition for writ of mandate. The court explained that the Board made and supported the necessary findings to approve a countywide charter. The Board found that Polytechnic would offer services to at-risk students across the county who would benefit from its services and that Polytechnic's services could not be provided as well operating as a charter school in a single school district. Polytechnic would address the scale of need across the county by working with local middle schools to identify the target student population and by enhancing its ability to acquire and finance facilities outside the jurisdiction of a single school district. The trial court also determined that section 47605.6 does not prohibit a single-site countywide charter and that the county did not provide the same educational services to be provided by Polytechnic because San Andreas Continuation High School was a District program serving only students 16 years or older.

## II. DISCUSSION

### A. JUDICIAL NOTICE

We deferred for consideration with the merits of the appeal the District's unopposed request for judicial notice of legislative history materials pertaining to the enactment of section 47605.6. (Evid. Code, §§ 451, 452.) The legislative committee reports and analyses cited in the District's briefs have been published. While a court may consider a statute's legislative history to ascertain the statute's purpose and meaning where the statute is ambiguous, it is unnecessary to seek judicial notice of published legislative materials. We therefore treat the request for judicial notice as a citation to the published materials, and deny the formal request for judicial notice. (*Madrigal v. Hyundai Motor America* (2025) 17 Cal.5th 592, 609, fn. 10.)

## B. THE CHARTER SCHOOLS ACT OF 1992 (CSA) AND STANDARD OF REVIEW

The Legislature has a constitutionally mandated duty to provide a public education system. (Cal. Const., art. IX, § 5; *San Jose Unified School Dist. v. Santa Clara County Office of Education* (2017) 7 Cal.App.5th 967, 970–971 (*San Jose Unified School Dist.*).) While traditionally establishing local school districts to carry out that mandate, the Legislature authorized the creation of charter schools in 1992 through the Charter Schools Act. (*San Jose Unified School Dist.*, at pp. 971, 972; § 47600 et seq.) Charter schools are part of the public school system but offer an alternative to schools operated by the district. (*San Jose Unified School Dist.*, at p. 971.) They compete with public schools for a share of state and local education funding to encourage continual improvements in all public schools. (*Id.* at pp. 972–973; § 47601, subd. (g).)

Charter schools can be created in four ways: by application to a school district (§ 47605), by appeal of a denial by a school district to a county board of education (§ 47605, subd. (k)(1)), by appeal of a denial by a county board to the State Board of Education (§ 47605, subd. (k)(2)), or by application for a county charter to a county board of education (§§ 47605.5, 47605.6). (*San Jose Unified School Dist.*, *supra*, 7 Cal.App.5th at p. 972 [citing five ways]; see former § 47605.8, repealed by Stats. 2019, ch. 486, § 5, eff. July 1, 2020.) A district's discretion to deny a charter petition is limited. (*California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1307, 1318 (*California School Bds. Assn.*).) A county board of education, in contrast, has broad discretion to deny a countywide charter petition and indeed must deny a countywide charter petition if certain enumerated grounds such as an unsound proposed education program are found. (§ 47605.6, subds. (a)(1) & (b).) Unlike district charters, the denial of a countywide charter cannot be administratively appealed. (Compare § 47605.6, subd. (k) with § 47605, subd. (k).) The chartering body is obligated to oversee each charter school under its authority. (*San Jose Unified School Dist.*, at pp. 972–973.)

The District seeks review of the trial court's denial of a peremptory writ of mandate to set aside the approval of Polytechnic's countywide charter petition based on failure to comply with section 47605.6 or, in the alternative, abuse of discretion in determining the requirements of section 47605.6 were met. We review any factual findings by the trial court for substantial evidence and independently review its decisions on legal issues. (*San Jose Unified School Dist.*, *supra*, 7 Cal.App.5th at p. 974.) Whether the Board's action was consistent with section 47605.6 and the comprehensive statutory scheme governing charter schools is a question of statutory interpretation, which we review de novo. (*California School Bds. Assn.*, *supra*, 186 Cal.App.4th at p. 1314.) Judicial review of the Board's action is limited to a determination of whether its decision was arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair. (*Ibid.*) We will not substitute our judgment for that of the Board and must uphold its determinations even if reasonable minds may disagree as to the wisdom of its actions, which are entitled to considerable deference. (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 779–780 (*Alejo*).)

Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) We first examine the statute's words and give them a plain and commonsense meaning. (*Ibid.*) We consider the language of the entire scheme and related statutes, harmonizing the terms when possible. (*Ibid.*) If the statutory language is susceptible of more than one reasonable interpretation, we may look to extrinsic aids, including the statute's ostensible purpose, the legislative history, public policy, administrative interpretation, and the pertinent statutory scheme. (*In re M.M.* (2012) 54 Cal.4th 530, 536 (*In re M.M.*).)

## C. THE BOARD DID NOT VIOLATE SECTION 47605.6 IN APPROVING POLYTECHNIC'S COUNTYWIDE CHARTER

According to section 47605.6, a county board of education may approve a countywide charter petition if the charter school operates at one or more sites within the geographic boundaries of the county and provides instructional services not generally provided by a county office of education. (§ 47605.6, subd. (a)(1).) The county board may approve the countywide charter only if it finds that the educational services to be provided by the charter school will offer services to a pupil population that (1) will benefit from those services and (2) cannot be as well served by a charter school operating in only one school district. (§ 47605.6, subd. (a)(1).) The county board must be satisfied that the charter school has reasonable justification for why it could not be established by petition to a school district under Section 47605. (§ 47605.6, subd. (b).) Here the District argues the Board improperly approved Polytechnic's countywide charter petition because it is a single-site program that could operate as effectively as a charter operating in one school district and because its educational services are already provided by the Office of Education through San Andreas Continuation High School.

### 1. A Countywide Charter May Operate at One Location

The plain language of section 47605.6 evinces the unambiguous legislative intent that a countywide charter may operate at "one … site" within the county. (§ 47605.6, subd. (a)(1).) The District asserts that, despite that language, the Legislature intended countywide charters under section 47605.6 to operate from multiple site locations, making it nearly impossible to justify a single site countywide charter under section 47605.6 because they almost always operate in only one school district. According to the District, a single-site countywide charter is permissible when the proposed school site straddles two different school districts or lies in a remote area outside any school district boundaries. While we need not turn to legislative history

10

when the language of the statute is clear, we may consider such materials to ensure our interpretation conforms with legislative intent. (*In re M.M.*, *supra*, 54 Cal.4th at p. 536.)

Section 47605.6 was added to the Education Code in 2002 via Assembly Bill No. 1994 (2001–2002 Reg. Sess.). (*California School Bds. Assn.*, *supra*, 186 Cal.App.4th at pp. 1308–1309; § 47605.6, added by Stats. 2002, ch. 1058, § 8, pp. 6802, 6813.) The impetus behind Assembly Bill No. 1994 was satellite charter locations that were located at considerable distance from a home charter and were operating in violation of several laws. (*California School Bds. Assn.*, at pp. 1307–1308.) Because the violations were not earlier discovered due to the difficulties of monitoring satellite operations, Assembly Bill No. 1994 aimed to place a geographic restriction on a charter school's operations to enhance local oversight of charter schools. (*California School Bds. Assn.*, at p. 1308.)

The Legislative Counsel's Digest for Assembly Bill No. 1994 (Stats. 2002 (Reg. Sess.) Summary Dig., p. 487) notes the bill authorizes a county board of education to approve a countywide charter for charter schools "that would operate at multiple sites throughout the county," but the Digest misstates the law as it was ultimately enacted. The Senate amendment adding the provision requiring a countywide charter to operate "at multiple sites" within the county (Sen. Amend. to Assem. Bill No. 1994 (2001–2002 Reg. Sess.) Aug. 15, 2002) was later changed to "one or more sites" within the county (Sen. Amend. to Assem. Bill No. 1994 (2001–2002 Reg. Sess.) Aug. 26, 2002). The Assembly ultimately concurred in the Senate amendment authorizing a countywide charter school operating at "one or more sites" in the county (Assem. Floor Analysis, Concurrence in Sen. Amends. of Assem. Bill No. 1994 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 5), and the final enrolled and chaptered version of the bill refers to "one or more sites." (Assem. Bill No. 1994 (2001–2002 Reg. Sess.) as enrolled Aug. 30, 2002 & as chaptered Sept. 29, 2002.) We will disregard the conflicting "multiple sites" language

11

referenced in the Digest.  (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 597–598.)

The 2002 amendments establish the Legislature's preference for locally chartered schools to enhance local oversight of charter schools.  (*California School Bds. Assn.*, *supra*, 186 Cal.App.4th at pp. 1318–1321.)  A countywide charter located at a single site would be subject to local oversight by the county in accordance with such intent.  (*Id.* at p. 1308.)  The Board was authorized by statute to grant Polytechnic's petition for a countywide charter despite its single location within the District.

### 2.  Polytechnic Does Not Provide Services Provided by the County

A county board of education may approve a petition for a countywide charter only if the charter provides instructional services "not generally provided by a county office of education."  (§ 47605.6, subd. (a)(1).)  Schools operated by county offices of education are not for the general student population and instead offer specialized vocational or technical training for specialty groups, including students who are unhoused, on probation, in juvenile detention, or have been expelled from other schools.  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 218 (*Today's Fresh Start*).)  A charter school may petition to serve that same student population under section 47605.5 or may petition to serve a general student population under section 47605.6.  (*Today's Fresh Start*, at p. 219.)  Countywide charters established under section 47605.6 are designed to complement services provided by county offices of education.  (*Today's Fresh Start*, at p. 219.)  The District argued below and reiterates on appeal that San Andreas Continuation High School is a school operated by the Office of Education and generally provides the same instructional services as Polytechnic.  The trial court found San Andreas Continuation High School is a District-run school that serves a student population different than Polytechnic.

While a continuation school is generally maintained by a school district (§ 48432), the evidence shows that San Andreas Continuation High School is located in Hollister

12

and operated by the Office of Education in agreement with the District. According to the District, San Andreas serves an "at-risk" student population that overlaps with the population Polytechnic aims to serve, including students who are "Hispanic/Latino, … socioeconomically disadvantaged, and … English learners." It also provides similar programs to those provided by Polytechnic, including a small school setting, accelerated credit recovery, University of California approved coursework curriculum, and independent study programs.

The two schools differ in a critical way. San Andreas enrolls only at-risk students 16 years and older, while Polytechnic serves the general at-risk student population aged 13 to 22. A countywide charter serving the general student population does not compete with the County Office of Education in violation of section 47605.6, nor does Polytechnic provide the same services as those offered by the Office of Education. (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 219.)

### 3. The Board Did Not Abuse Its Discretion in Finding Polytechnic Would Offer Services to Students Who Could Not Be As Well Served by a District Charter

A district-level charter preference is built into the CSA.[1] (*California School Bds. Assn.*, *supra*, 186 Cal.App.4th at p. 1320.) Approval of a countywide charter petition requires a finding that "the educational services to be provided by the charter school will offer services to a pupil population that … cannot be served as well by a charter school that operates in only one school district in the county." (§ 47605.6, subd. (a)(1).) A county board of education can approve a countywide charter petition only if it is satisfied that "the charter school has reasonable justification for why it could not be established by petition to a school district pursuant to Section 47605." (§ 47605.6, subd. (b).) Polytechnic stated in its petition that it aimed to educate students around the county and

---

[1] Polytechnic cites to evidence excluded by the trial court to argue the CSA does not contain a preference for district charters. We do not rely on evidence excluded by the trial court.

13

work with local middle schools to provide a highly personalized program to at-risk students regardless of the student's residence. The Office of Education determined a countywide charter would ensure students throughout the county would receive equal admission preference to Polytechnic's program, which was particularly important because a district charter would disadvantage 7 percent of high school students who reside outside the District. The Board ultimately approved Polytechnic's countywide charter based on the petition and the findings of the Office of Education.

The District argues the Board could not rationally conclude Polytechnic would be unable to serve students as well by operating in a single school district because Polytechnic is in fact operating within a single school district. According to the District, the term "operates" under section 47605.6, subdivision (a)(1) refers to the location of a school's facilities, not the residence of the proposed at-risk population to be served. The CSA elsewhere requires certain charter schools to "locate" in accordance with the geographic limitations described in the statute. (See, e.g., § 47605.1.) We presume the Legislature did not intend to limit the term "operate" to "locat[ion]," given its use of the two terms within the same statutory scheme. (*People v. Smith* (2024) 100 Cal.App.5th 741, 760.)

The inquiry under section 47605.6 does not turn on the definition of "operates." Under the plain language of section 47605.6, the relevant inquiry is whether the educational services provided by the countywide charter would serve a pupil population that cannot be served as well by a school operating in only one school district. (§ 47605.6, subd. (a)(1).) Even accepting that Polytechnic is operating in only one school district, the Board was correct to assess whether Polytechnic's proposed education services would serve the at-risk student population better as a countywide charter or district charter.

The District asserts on reply that the phrase "a charter school that operates in only one school district in the county" under section 47605.6, subdivision (a)(1) does not refer

14

to district charters authorized under section 47605 because the Legislature did not expressly write section 47605 into subdivision (a) as it did into subdivision (b). (See § 47605.6, subd. (b) ["A county board of education may grant a charter for the operation of a charter school … only if it is satisfied that … the charter school has reasonable justification for why it could not be established by petition to a school district pursuant to Section 47605."].) The phrase "as well" under section 47605.6, subdivision (a)(1) requires a comparison between a countywide charter and a charter school operating "in only one school district in the county." Therefore given the legislative preference for district charters (*California School Bds. Assn.*, *supra*, 186 Cal.App.4th at p. 1320), we conclude that "a charter school that operates in only one school district in the county" must refer to a district charter under section 46705.

Polytechnic stated that if it operated in only one school district, it could not equally provide disadvantaged students residing across the county with its highly personalized educational services. District charters must accept all students who wish to attend regardless of residence within the state but must also give a lottery preference to students residing within the district once applications exceed the charter school's enrollment capacity. (§ 47605, subds. (e)(1) & (e)(2).) Countywide charters must do the same, but the lottery preference extends to all students residing within the county. (§ 47605.6, subds. (e)(1) & (e)(2).) The Board rationally concluded that avoiding an in-district lottery preference justified a countywide charter in order to protect Polytechnic's ability to serve its entire targeted student population. (*Alejo*, *supra*, 212 Cal.App.4th at p. 780.) The high school located within the District enrolls over 3000 students, while the high school located within Aromas-San Juan Unified School District enrolls over 200 students. Other opportunity and continuation high schools serving a limited high school student population in the county enroll about 100 students. Polytechnic estimated 500 to 800 at-risk students countywide would qualify for its services. If Polytechnic held only a district charter and all of the targeted at-risk students attempted to enroll, the students

15

residing outside of the district but still within the county would not have an equal chance to attend Polytechnic, interfering with Polytechnic's intended countywide model. Even if the Board could have ruled differently, we must defer to the Board's exercise of discretion in a particular manner absent an abuse of that discretion. (*Alejo*, at p. 780.)

The District argues the in-district lottery disadvantage could be mitigated through lottery enrollment preferences for at-risk students residing outside the District. (§ 47605, subd. (e)(2)(B).) But regardless of whether Polytechnic *could* implement residence-based lottery preferences under the CSA, nothing in section 47605.6 *requires* a petitioning charter program to structure lottery preferences to comply with the Act's preference for district charters. The Act merely requires a determination that the countywide charter would provide services to students who cannot be as well served by a district level charter, which the Board found here.

The District also asserts that the Board's finding renders the Act's district charter preference superfluous. In the District's opinion, all charter programs would qualify for countywide status if the in-district lottery preference under section 47605, subdivision (e)(2)(B) justifies a countywide charter, because all district charter schools must enroll out-of-district students and implement a lottery preference under the law. But the Board did not approve Polytechnic's countywide charter solely because of the lottery preference. The Board relied on the lottery preference under section 47605, subdivision (e)(2)(B) to complete the inquiry required under section 47605.6. As the District acknowledges, the Board approved the petition because Polytechnic aimed to provide equal educational opportunities to students across the entire county and the Board found it could not do so if limited by the in-district lottery preference. The Board's actions were reasonable in the context of section 47605.6. As section 47605.6 was enacted to permit greater oversight over charter programs (*California School Bds. Assn.*, *supra*, 186 Cal.App.4th at p. 1308) and Polytechnic's model is to educate at-risk students

16

throughout the county, a countywide charter is a reasonable vehicle for oversight of Polytechnic's operations.

## III. DISPOSITION

The judgment denying the District's petition for writ of mandate is affirmed. Respondents shall recover costs on appeal by operation of California Rules of Court, rule 8.278.

_____

Grover, Acting P. J.

**WE CONCUR:**


_____

Lie, J.


_____

Wilson, J.


H053061
*San Benito High School District v. San Benito County Board of Education*